IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PAY AS YOU GO, LLC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. _____ |
| AT&T INC. | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Pay As You Go LLC, by and through its undersigned attorneys, files this Complaint for Patent Infringement against Defendant AT&T Inc. and alleges as follows.

## NATURE OF ACTION

1. This is an action for infringement of United States Letters Patent No. 7,013,127 under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

## THE PARTIES

2. Plaintiff Pay As You Go LLC ("PAYG") is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer Ave Suite 500, Cheyenne, Wyoming 82001. PAYG is in the business of licensing patented technology. PAYG is the assignee of all right, title, and interest in United States Letters Patent No. 7,013,127.

3. On information and belief, Defendant AT&T Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 208 S. Akard Street, Dallas, Texas.

## JURISDICTION

4. The claims in this action arise under the Patent Laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Defendant is subject to this Court's specific and general personal jurisdiction at least because Defendant conducts substantial business in the State of Texas, including (i) having solicited business in the State of Texas, transacted business within the State of Texas, and/or attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed products and services into the stream of commerce and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District and/or induced others to commit acts of infringement within this District. The exercise of jurisdiction over Defendant would therefore not offend the traditional notions of fair play and substantial justice.

6. On information and belief, Defendant, directly and/or through one or more agents, affiliates, and/or intermediaries, has advertised and continues to advertise (including through websites), used, offered to sell, sold, distributed, and/or induced the sale and/or use of infringing products and services in the State of Texas and in this District. Defendant has, directly and/or through a distribution network, purposefully and voluntarily placed such products and services in the stream of commerce via established channels knowing and expecting them to be purchased and used by consumers in the State of Texas and this District.

7. On information and belief, Defendant has committed acts of direct infringement in the State of Texas and/or committed indirect infringement based on acts of direct infringement by

others in the State of Texas and in this District, including Defendant's customer end-users. On information and belief, the website www.att.com is owned and controlled by Defendant. The website www.att.com includes a link for Defendant's customer end-users in the United States, including those in the State of Texas and in this District, to access their individual accounts with Defendant for the purpose of paying for service(s) from Defendant (https://www.att.com/prepaid/).

## VENUE

8. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in the State of Texas and in this district and has a regular and established place of business in the State of Texas and in this district, such as Defendant's facilities at 3400 West Plano Parkway, Plano, Texas.

## THE PATENT IN SUIT

9. On March 14, 2006, United States Letters Patent No. 7,013,127 (hereinafter "the '127 Patent"), entitled "SYSTEM AND METHODS FOR EMPLOYING 'PAY-AS-YOU-GO' SERVICES," was duly and legally issued by the United States Patent & Trademark Office. A copy of the '127 Patent is attached hereto as Exhibit 1.

10. The '127 Patent issued from U.S. Patent Application Number 10/337,301, which was filed on December January 7, 2003.

11. PAYG is the current and sole owner of all rights, title and interest in and to the '089 Patent and, at a minimum, of all substantial rights in the '127 Patent, including the exclusive right to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '127 Patent.

12. Upon information and belief, Defendant has had actual notice of the '127 Patent and Defendant's infringing activities since at least April 2023.

## Overview of the Technology

13.     The '127 Patent relates to telecommunications services and methods that enable a user and/or other responsible party to make payments as the user uses the telecommunication services.

14.     As described in the specification of the '127 Patent, it was known in the art of telecommunication services before the invention claimed in the '127 Patent to provide calling card accounts to customers. A customer would receive account information in the form of a personal identification number ("PIN") and a toll-free access number that allowed the customer to utilize the account. Those accounts were generally one of two types: (1) a pre-paid account, which was an account with a pre-defined amount of usage paid for in advance by the customer; and (2) a usage-based account, which was an account that is billed on a periodic billing cycle according to usage during the billing period. Pre-paid wireless (cell phone) service was one example of this.

15.     Prior to the '127 Patent, pre-paid wireless service enabled customers to utilize the convenience of cellular and digital communications by establishing a prepaid account with a wireless telecommunication vendor. Typically, prepaid wireless cards, each card corresponding to a wireless services account, were purchased in preset denominations, such as $20, $50 or $100, often from a limited number of locations. Each card provided the user with a specified amount of wireless calling dollars or minutes. After the initial allocation was exhausted, the user could "recharge" or reload their wireless account, usually by calling a toll-free number, and either talking with a customer service representative or using an automated system to charge additional calling dollars or minutes to a credit card.

16.     These prior art pre-paid systems were burdensome to both the user and the telecommunication service provider. Moreover, these prior art pre-paid systems generally required

that the user have a current credit card with an available balance, which created a significant burden in and of itself to certain classes of user, such as individuals who lacked sufficient regular income, individuals with too much existing debt, individuals with poor credit histories, and individuals who lacked and/or were unable to obtain a social security number.

### The Patented Invention

17.     A system and method for effecting payment for pay-as-you-go telecommunication services via a third-party are provided. The claimed method comprises: monitoring a user's use of telecommunication services at regular time intervals; communicating results of the monitoring to the provider of the telecommunication services, who then processes the results and communicates those to the user; and receiving a payment from the user, wherein: (i) the payment is received from the user at a third-party point-of-sale together with an account identifier, (ii) data indicative of the payment transaction is received sale by the telecommunication services provider from the third-party; and (iii) an amount of money equal to the payment is received by the telecommunications services provider from the third-party. The point-of-sale can be a physical location, such as a retail merchant site; a vending machine; and an automated teller machine, or a virtual location, such as a website or application. The payment at the point-of-sale can be made in any acceptable form, including cash, a wire- or bank-transfer, a debit card transaction, and a credit card transaction.

18.     The systems and methods of the invention are an improvement over conventional systems and methods that allow a user to pay as the telecommunication services are being used (otherwise known as "pay-as-you-go"). Various embodiments of pay-as-you-go systems and methods are illustrated in FIG. 1 and FIG. 2 of the '127 Patent.

19.     Unlike standard mobile phone calling plans that charged a set monthly fee for a specific amount of calls, pay-as-you-go calling plans only required the user to purchase calling

minutes when they would like to make a call. This was a significant advantage to consumer-users who did not want to be bound by an annual, or even biannual, contract, as well as to consumer-users who did not possess sufficient credit (or credit-worthiness) to qualify for such a contract. This latter group included not only individuals with bad credit ratings, but also hourly-wage earners, individuals under the age of 18, and individuals unable to obtain a social security number.

20. Pay-as-you-go calling plans also represented an advance to consumer-users who, for whatever reason, wanted to preserve their privacy and so were reluctant to enter into a contract with a telecommunications service provider that would require the disclosure of confidential personal information, like the consumer-user's name, home address, social security number, and the like. In 2020, there were approximately 74 million pay-as-you-go consumer-users in the United States.

21. Moreover, with pay-as-you-go systems, use of the telecommunication services can be suspended by the telecommunication services provider upon the available balance in a user's account being fully consumed. And because use is monitored at regular time intervals, such a suspension can generally be achieved before the user **10** and/or the responsible party accumulates any balance due.

22. A significant drawback of prior art pay-as-you-go systems and methods, however, was the inability to add extra time or services after the initial purchase of the phone and time without a credit or debit card. Because of this, many prior art pay-as-you-go systems and methods were almost as bad as standard mobile phone calling plans for individuals with bad credit ratings, hourly-wage earners, individuals under the age of 18, and individuals without social security numbers. Such systems and methods were also less-than-desirable for individuals who wished to protect their private, personal confidential information and/or preserve their anonymity through

6

cash-only transactions or the like. For all of those different groups of individuals, prior to the invention of the methods claimed in the '127 Patent, the only solution to the problem of running out of time was to purchase another pre-paid phone altogether—a "solution" which could end up being prohibitively expensive in the long term.

23. Unlike prior art pay-as-you-go systems and methods which required direct payment from a user to the telecommunications service provider via a credit or debit card in order to add time for further use, the methods of the invention claimed in the '127 Patent permit a user **10** to make payments via a third-party point-of-sale site. Such a third-party point-of-sale site may be a physical location, such as a gas station or convenience store equipped with an electronic point-of-sale device, or a virtual location, such as a website or app like PayPal® or Venmo®. While such payments can be made electronically, *e.g.*, via credit card, debit card, check card or any other such means, including on-line banking, they do not have to be made electronically like the prior art systems required. Rather, payments according to the invention claimed in the '127 Patent can also be made in cash, *i.e.*, the user **10** can make a payment with cash at a designated location **12**, and the amount paid at the designated location **12** will credited to the user's account **50** to cover the services rendered in step **68** of FIG. 2.

24. To use a designated location **12** to make payment, a user **10** may be issued an account identifier **14**, *e.g.*, an individual account number, in step **62** of FIG. 2, that uniquely identifies that user **10**. Such an account identifier **14** enables a user **10** to make a payment at the designated location in step **64** of FIG. 2. As noted above, this may be done, *e.g.*, via a point-of-sale terminal **16**, where a user's credit card or debit card is "swiped" both to identify the user **10** and to collect payment of a specified amount, or where a user physically inserts cash in the form of paper bills and/or metal coins and enters his/her account identifier via a pin pad or the

7

like. The payment information is then relayed to the telecommunication services provider **18** in step **66** of FIG. 2. The designated location **12** can be any physical or virtual location that processes a credit or debit card and/or can accept cash, *e.g.*, retail stores such as a dry cleaner, a drug store, a supermarket, or a convenience store, etc., and websites and mobile applications like PayPal®.

### The Claims of the '127 Patent are Directed to Patentable Subject Matter

25. The inventions claimed in the '127 Patent include methods that enable a user of pay-as-you-go telecommunication services to make payments for those telecommunications services via a third-party point-of-sale.

### The claimed inventions are directed to a solving a problem that existed in conventional telecommunications at the time

26. Prior to the invention claimed in the '127 Patent, users of telecommunications services that did not have a credit card, debit card, and/or linkable bank account were generally unable to use "pay as you go" systems. This requirement presented a problem to users with bad credit ratings, hourly-wage earners, and individuals under the age of 18, as well as individuals who wished to protect their privacy and/or preserve their anonymity.

### The claimed inventions provide an unconventional solution to that problem

27. The methods claimed in the '127 Patent are directed to novel ways of permitting users of telecommunications services to purchase those services on an as-needed basis without needing a credit card, debit card or linkable bank account, and without having to disclose personal identifying information. This represents a significant advantage to users with bad credit ratings, hourly-wage earners, individuals under the age of 18, and individuals without social security numbers, as well as individuals who wished to preserve their anonymity.

28. The inventive methods are exemplified by claim 1 of the '127 Patent, which is directed to a method for affecting payment of telecommunication services, comprising:

monitoring a user's use of the telecommunication services at regular time intervals;

communicating results of said monitoring to a telecommunication services provider, wherein said telecommunication services provider processes said results and communicates processed results to said user; and

receiving a payment from the user, the payment obtained from a payment transaction wherein:

a payment is received from the user at a point-of-sale together with an account identifier,

data indicative of the payment transaction is received from the point-of-sale by the telecommunication services provider, and

an amount of money equal to the amount of payment is received from a point-of-sale proprietor by the telecommunication services provider.

### The claims are not directed to an abstract idea or law of nature

29. The claims of the '127 Patent are not directed to an abstract idea or law of nature. The claims of the '127 Patent neither describe nor claim a concept or generic method. Instead, the '127 Patent provides solutions to a specific and persistent problem that existed with conventional pay-as-you-go systems and methods, *viz.*, how could certain users—including individuals with bad or no credit, hourly-wage earners, individuals under the age of 18, individuals without a social security number, and individuals who wished to maintain their privacy—continue to use a pre-paid phone or similar device once the original time had expired and/or been consumed. The inventions claimed in the '127 Patent provide a real-world solution to that real-world problem.

30. The invention described in the claims of the '127 Patent enables users to add to a pre-paid phone or similar device after the initial purchase thereof without using a credit or debit card or bank account and without needing to reveal personal confidential information, such as an individual's name or social security number. The patented invention does this by enabling such users to provide payment to the telecommunications service provider through a third-party willing to accept forms of payment other than a credit or debit card, including virtual sites, like PayPal®, and brick-and-mortar businesses, like convenience stores and gas stations.

### The claims do not preempt their field

31. The claims of the '127 patent do not merely recite a generic way of affecting payment for pay-as-you-go telecommunications services. Rather, the claims of the '127 patent recite a particular way of effecting such payments via a third-party point of sale site.

32. Alternative ways exist and are known for a user to affect payment for pay-as-you-go telecommunications services, including the prior art method of submitting a credit or debit card directly to the provider of the telecommunications services.

**DEFENDANT'S SYSTEM AND SERVICES**

33. On information and belief, Defendant provides wireless telecommunications services to over two million customer-users in the United States.

34. On information and belief, Defendant's customer-users purchase Defendant's telecommunications services in blocks of data that can be used in a single month on the customer-user's device.

35. On information and belief, Defendant monitors the amount of Defendant's telecommunications services used by each of Defendant's customer-users.

36. On information and belief, Defendant communicates this information to Defendant's customer-users.

37. On information and belief, Defendant's customer-users can purchase additional blocks of data during the same time period through a link on Defendant's website. On information and belief, Defendant's customer-user can choose to pay for additional blocks of data using a third-party payment service.

38. On information and belief, individuals using a third-party payment service are required to establish an identifying account with such third-party payment service.

39. On information and belief, when a third-party payment service receives a payment from one of Defendant's customer-users, that third-party payment service transmits the value of the payment to Defendant along with information sufficient to identify the customer-user that made the payment.

40. On information and belief, Defendant directs or controls its customer-users' use of its telecommunications service and means for affecting payment thereof.

**FIRST CAUSE OF ACTION**
**(Direct Infringement of the '127 Patent)**

41. PAYG hereby repeats and re-alleges the allegations contained in paragraphs 1 to 40 as if fully set forth herein.

42. The '127 Patent is presumed valid under 35 U.S.C. § 282.

43. PAYG has complied with the requirements of 35 U.S.C. § 287, as have all prior owners of the '127 Patent.

44. Defendant's pay-as-you-go telecommunication services are covered by one or more claims of the '127 Patent and therefore infringe the '127 Patent.

45. Defendant's direct infringement of the '127 Patent has injured and continues to injure PAYG and PAYG is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

46. Despite Defendant's knowledge of the '127 Patent and its infringing activities, Defendant has continued to sell and/or offer for sale services falling within the scope of one or more claims of the '127 Patent, without authority from PAYG.  Defendant has therefore acted recklessly and Defendant's direct infringement of the '127 Patent has been willful, egregious, deliberate and intentional, justifying an award to PAYG of increased damages and attorneys' fees and costs.

47. Even after becoming aware of its direct infringement of the '127 Patent, on information and belief, Defendant has made no effort to alter its services or otherwise attempt to design around the claims of the '127 Patent in order to avoid infringement.  These actions demonstrate Defendant's blatant and egregious disregard for PAYG's patent rights.

48. As a result of Defendant's unlawful activities, PAYG has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendant's continued direct infringement of the '127 Patent causes harm to PAYG in the form of loss of goodwill,

damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate PAYG for these harms. Accordingly, PAYG is entitled to preliminary and permanent injunctive relief.

Dated: October 3, 2023

Respectfully submitted,

OBLON, McCLELLAND, MAIER & NEUSTADT, L.L.P.

By: /s/ *Donald R. McPhail*

Donald R. McPhail (admitted)
1940 Duke Street
Alexandria, Virginia 22314
Tel: (703) 412-1432
Fax: (703) 413-2220
Email: dmcphail@oblon.com

*Attorney for Plaintiff Pay As You Go LLC*